In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-4293

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JODY W. LOWE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 06-CR-122-C—**Barbara B. Crabb**, *Chief Judge.*

ARGUED OCTOBER 24, 2007—DECIDED FEBRUARY 15, 2008

Before FLAUM, MANION, WILLIAMS, *Circuit Judges.*

FLAUM, *Circuit Judge.* Jody Lowe pled guilty to distributing images of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2) while reserving the right to challenge the lawfulness of the search warrant that led to his arrest. Lowe argues that the affidavit in support of the search warrant contained material false statements, and that probable cause to issue the warrant did not exist. The district court denied his motion to quash the search warrant and suppress the evidence seized during the execution of the warrant, and we affirm.

**Background**

Tim Schultz, a special agent with the Wisconsin Department of Justice, specializes in internet crimes against children. In January 2006, Schultz received information from Detective Dale Williams of the Seattle, Washington Police Department regarding Jody Lowe. This information related to images of child pornography exchanged between an individual in Washington and Lowe. Soon thereafter, on January 26, 2006, Schultz received a package of information from Williams detailing the investigation. He also researched Wisconsin Department of Transportation records to learn that Lowe resided with his wife and children at 654 Park Ridge Drive in Eau Claire, Wisconsin. Schultz conducted surveillance of the premises and observed the home, a van registered to the Lowes, a motor home, and a semi-tractor.

Paul Becker, an investigator in the Eau Claire Police Department's Juvenile Crimes Division, was assigned to assist Schultz's investigation. Schultz provided Becker with the packet of information that he had received from Williams in Seattle. On February 2, 2006, the two officers met with Eau Claire County Assistant District Attorney Emily Long and presented her with a draft of an affidavit for a search warrant that Schultz had prepared. They submitted the affidavit so that the District Attorney's Office could convert it to the office's format for search warrant applications. At the meeting, Schultz and Becker discussed their investigation with Long and indicated that they wished to search Lowe's residence. Between February 2 and February 7, the two officers together conducted surveillance of Lowe's residence in preparation for the execution of the search warrant. There was an element of deja vu here for Becker, because he had already been to Lowe's residence and spoke with him in 2002 regarding an investigation into allegations that he might possess child pornography.

Long edited the affidavit to comply with office formatting, but at the last minute, because Schultz was not able to sign the document that day, Becker was substituted as the affiant. Becker did not play a role in revising the affidavit and relied on Long to draft it correctly. Becker read the affidavit before swearing to it before an Eau Claire County Circuit judge on February 7, 2006. The next day, Becker recognized that the face sheet of the warrant did not include all of the places to be searched,[1] so the detectives acquired a new face sheet. Becker read the new warrant, did not notice any mistakes, and swore it out before a different Eau Claire Circuit Court judge. Schultz also read both affidavits and did not notice any mistakes.

Unfortunately, the affidavit was sloppily edited, and contained a number of attribution errors. The last minute switch from Schultz to Becker as the affiant required a little more effort than simply using the "find and replace" function on a word processor. In particular, there were four errors. First, the affidavit stated that Becker conducted the surveillance of Lowe's residence on January 26th when it was in fact Schultz. Nevertheless, we know that Becker did accompany Schultz on a subsequent surveillance operation soon thereafter. Second, the affidavit indicated that Becker received information from Williams in Seattle when in reality Schultz was the true recipient. However, it is true that Schultz did then forward this packet of information on to Becker. Third, the affidavit suggested that Becker, not Schultz, had personally researched the Wisconsin Department of Transportation records to determine where Lowe lived. Fourth, the "summary of experience and training" section

---

[1] Specifically, the face sheet did not include a semi-tractor and trailer among the places that were to be searched.

of the affidavit referred to Schultz's experience and training, though Becker's background is in fact substantially similar. Thus while these errors erroneously attributed knowledge and acts to Becker, in each instance, what was true for Schultz was ultimately, in some way, also true for Becker.

The search warrant based on this affidavit was executed on February 8, 2006. Police uncovered deleted images of child pornography on one computer and three CDs containing 1,397 images of children being sexually exploited. Lowe waived his *Miranda* rights and admitted that he had received all of the sexually explicit images attached to various e-mails. In addition, Lowe was not surprised when investigators located approximately 6,500 images of child pornography and/or child erotica on his computer.

On May 31, 2006, the grand jury indicted him with two counts, alleging that he distributed images of children engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a), and that he possessed a CD containing images of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B). Lowe filed a motion to suppress under *Franks v. Delaware*, 438 U.S. 154 (1978), where he argued that Becker made several material false statements with reckless disregard for the truth in his affidavit, and that the warrant failed to establish probable cause. Lowe subsequently pled guilty to one count, conditional on his right to challenge the lawfulness of the search warrant. Magistrate Judge Stephen L. Crocker issued a report recommending denial of Lowe's motion, which the district court adopted in its order on November 30, 2006. On that day, Lowe was sentenced to 144 months in prison to be followed by twenty years of supervised release.

**Discussion**

On appeal, Lowe raises the same issues that he presented below regarding the lawfulness of the search warrant. First, he argues that Becker exhibited reckless disregard for the truth when he swore to the truth of the affidavit. Second, he contends that the district court erred in determining that the search warrant affidavit demonstrated probable cause to search his residence. We analyze each issue in turn.

**A**

The Supreme Court held in *Franks v. Delaware* that intentionally or recklessly submitting false statements in an affidavit supporting a search warrant violates the Fourth Amendment. At a *Franks* hearing, a defendant must show by preponderance of the evidence that: (1) the search warrant affidavit contained a false material statement or omitted a material fact; (2) the affiant omitted the material fact or made the false statement intentionally, or with reckless disregard for the truth; and (3) the false statement is material in order to support the finding of probable cause. *See United States v. Marrow*, 272 F.3d 817, 821 (7th Cir. 2001). This Court has held that an affiant acts with reckless disregard for the truth when he or she "in fact entertained serious doubts as to the truth of his allegations." *United States v. A Residence Located at 218 Third Street, New Larus, Wisconsin*, 805 F.2d 256, 258 (7th Cir. 1986). It follows that negligence does not constitute reckless disregard for the truth. *Id.*

Lowe contends that the incorrect statements contained in the affidavit were made with reckless disregard for the truth, and should therefore be redacted. The remaining portions of the affidavit, Lowe claims, are then

insufficient to establish probable cause. The primary statements Lowe refers to here are, first, that Becker did not receive the package from Williams, and second, that Becker did not research the Department of Transportation records for Lowe's address. With respect to intentionality, Lowe notes that Becker read the affidavit carefully enough to notice that the face sheet did not indicate that the semi-tractor and trailer were to be searched, and so he would have noticed these other errors.

Before turning to the merits of Lowe's *Franks*-based arguments, we must evaluate, as the district court did, whether the purposes of the exclusionary rule are even implicated in this case. To be sure, the Supreme Court has clearly stated that the "'prime purpose' of the [exclusionary] rule, if not the sole one, 'is to deter future unlawful police conduct.'" *United States v. Janis*, 428 U.S. 433, 446 (1976) (quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974)). Hence we must ask ourselves precisely what type of police misconduct would be deterred in the future if we were to suppress evidence from the search in this case. The record reflects that the inaccuracies contained in the affidavit solely arose from poor editing on the part of the District Attorney's Office. While careless drafting by government attorneys is indeed problematic, it is not tantamount to police misconduct that rises to the level of disregard for citizens' Fourth Amendment rights. Significantly, the poor editing here did not actually help the government's case: an affidavit that correctly referred to Becker and relied on his subjective knowledge would have been more than adequate to establish probable cause. The exclusionary rule serves to deter officers from obtaining warrants based on false information, not to deter them from obtaining warrants based on accurate information that is reported to the issuing state court judge in a somewhat slipshod manner. Given the source of the inaccuracies

here, application of the exclusionary rule would be too
blunt of an instrument. We therefore agree with the
district court that the purposes of the exclusionary rule
are not implicated in this case.

Even if we were to disregard the purposes of the Fourth
Amendment and look specifically at the outcome of the
*Franks* hearing, Lowe's arguments would still come up
short. First, Lowe's assertion that Becker noticed an
error on the face sheet of the warrant—quite literally
the first page—is not enough to establish that he swore
to the affidavit as a whole with a reckless disregard for
the truth. This is particularly true given that the defen-
dant has the burden of proof in a *Franks* hearing. Second,
there is no evidence that tends to indicate that Becker
entertained serious doubts regarding the veracity of the
statements contained in the affidavit. To the contrary,
the record indicates that (1) Becker played no role in
drafting the affidavit; (2) the Assistant District Attorney
("ADA") drafted it after she received the first draft
from Schultz; (3) Becker relied on the ADA to draft it
correctly; and (4) he read the affidavit prior to signing
both versions, but did not see any mistakes. Lowe has
presented this Court with no reason to believe that the
magistrate judge committed any clear error in concluding
that Becker's testimony was credible, and that he did not
pursue the warrant with a reckless disregard for the truth.
Third, with respect to incentives, we are unable to see
what the government had to gain by creating these
inaccuracies, since a correctly drafted affidavit tailored
to Becker as affiant would have been perfectly accept-
able—perhaps even more so than the affidavit at issue
here.[2] At worst, what we have before us is a case where

---

[2] Lowe tries to argue that, under our precedent, the reviewing
court cannot consider new, truthful information that was not
presented to the warrant issuing court. *See United States v.*
(continued...)

Becker was simply negligent and should have read the affidavit more carefully.

## B

This Court reviews the district court's determinations of probable cause de novo. *United States v. Brack*, 188 F.3d 748, 755 (7th Cir. 1999). In cases where an affidavit is the only evidence presented to the magistrate in support of a search warrant, "[p]robable cause is established when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003) (citations omitted). At the core, we examine whether the issuing judge had a substantial basis for concluding that probable cause existed. *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002).

Lowe maintains that Becker's affidavit does not establish probable cause to suspect that child pornography would be found at his residence. The warrant to search his residence authorized a search for evidence that he violated Wisconsin's statute criminalizing possession of child pornography. WIS. STAT. § 948.12. This statute prohibits the possession of images showing a child engaged in sexually explicit

---

[2] (...continued)
*Harris*, 464 F.3d 733, 738 (7th Cir. 2006). In other words, a reviewing court should simply look at the affidavit with the false statements excised instead of also considering the new, truthful information presented at, for instance, a *Franks* hearing. While this is true as a general matter, it misses the mark here. The information presented to the reviewing court in this case did not involve new facts that bolstered a finding of probable cause. Instead, it involved the clarification of attribution errors, many of which are already apparent on the face of the affidavit.

conduct, which includes lewd exhibition of intimate parts. Wisconsin case law describes "lewd exhibition" as follows:

> First, the photograph must visibly display the child's genitals or pubic area. Mere nudity is not enough. Second, the child is posed as a sex object. The statute defines the offense as one against the child because using the child in that way causes harm to the psychological, emotional, and mental health of the child. The photograph is lewd in its "unnatural" or "unusual" focus on the juvenile's genitalia, regardless of the child's intention to engage in sexual activity or whether the viewer or photographer is actually aroused.

*State v. Petrone*, 468 N.W.2d 676, 688 (Wis. 1991).

Lowe's basic contention is that the description of the images contained in the affidavit do not meet the statutory definition of child pornography. In some cases, he is correct that the affidavit is a bit conclusory in labeling certain pictures as child pornography. However, Lowe runs into problems when discussing two images—one where the boys "look to be from 13 to 16," and one of a "12 to 15 year old boy." Lowe does not try to argue that these images do not fit the statutory definition, but he asserts that the age estimates are based on the officer's subjective experience of the images. He claims that these photographs should have been attached to the affidavit so that the issuing judge could have drawn his or her own conclusions with respect to the ages of these individuals. Nothing in our precedent suggests that this is necessary. First, estimating the age of persons is not an area that requires any special expertise. Second, the affidavit describes these images in sufficient detail to give the reader an understanding of why the officer placed certain individuals within a particular age range. As a general matter, an issuing court does not need to look at the images described in an affidavit in order to determine whether there is probable cause to

believe that they constitute child pornography. A detailed verbal description is sufficient. Take, for example, another image that causes problems for Lowe:

> . . . a black and white depiction of a naked 8 year old girl sitting at the edge of a bed. She has her legs spread open exposing her genitals to the camera. She is looking at the camera and smiling. She has her right arm extended out to her right with her right hand resting on pubic hair/vaginal area of an adult female who is lying back on the bed and is shown reading a pornographic magazine.

There is no disagreement about age here. Instead, Lowe argues that this image constitutes child erotica, not child pornography. What matters here is whether this constitutes "lewd exhibition" under Wisconsin law. Given the focus on the child's genitalia, and the atmospherics posing the child as a sex object, we are convinced that it does. And thus we are satisfied that there was a substantial basis for the issuing judge to believe that this image constituted lewd exhibition and that child pornography would be found at Lowe's residence.

## Conclusion

For the foregoing reasons, we AFFIRM the district court's judgment. Accordingly, Lowe's guilty plea governs and his conviction stands.

A true Copy:

   Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*