# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3134

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MICHELE CLARK,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 10-CR-30221—**G. Patrick Murphy**, *Judge*.

ARGUED JANUARY 9, 2012—DECIDED FEBRUARY 13, 2012

Before FLAUM and KANNE, *Circuit Judges*, and CHANG, *District Judge.**

FLAUM, *Circuit Judge*. Michele Clark ("Clark") pled guilty to possession of child pornography, 18 U.S.C. § 2252(a)(4)(B), contingent upon his right to appeal the district court's denial of his motion to suppress the

---

* The Honorable Edmond Chang, United States District Court for the Northern District of Illinois, sitting by designation.

images underlying the charges. He now exercises that right.

We affirm the judgment of the district court.

## I.  Background

### A.  Factual Background

#### 1.  Previous FBI Inquiries into Child Pornography and the Sexual Assault of a Minor Child at the Torch Club Road Address

From at least October 2008 until July 2009, Michele Clark lived with his brother and sister-in-law, Matthew and Danielle Clark, at their home at 3952 Torch Club Road in Alton, Illinois. Matthew and Danielle Clark asked him to leave in July 2009, taking issue with his drinking habits and frequent viewing of pornography on the computer.

During the time period in which Michele Clark resided with his brother and sister-in-law, the FBI observed that child pornography was being distributed on LimeWire, via an IP address associated with the Clarks' home. The IP address was formally registered to Matthew Clark. The FBI opened an investigation to uncover the source and customers of the child pornography, at which time an undercover agent downloaded seventeen files of suspected child pornography. It is not clear from the record what, if anything, came of that investigation.

In April 2010, Michele Clark resided at 3022 Glenwood Avenue in Alton, Illinois. One evening, Danielle Clark

went out, leaving her four-year-old daughter and ex-husband at home.[1] She locked the doors as she left. Both Matthew Clark and his daughter were asleep when she departed, and her daughter was wearing pajamas. After she left her residence, she received a text message from Michele Clark asking if she was at home and if he could come over. She replied "no."

When she returned home at 1:45 AM, Danielle Clark found Michele Clark in her home. Her daughter was no longer wearing any pajamas and was in only her underwear. She overheard Michele Clark tell her daughter to keep quiet and go to sleep and that he would return to buy her a bird. After he departed, Danielle Clark asked her daughter how Michele Clark entered the house. She answered that he came in through the kitchen window. Danielle Clark then called the police, at which time Detective David Vucich of the Madison County Sheriff's Office initiated an investigation into Michele Clark's possible sexual assault of a minor child.

Police found a plastic bucket placed below the kitchen window, and the screen to the window was pushed up. Danielle Clark stated that the bucket was not there when she left her home earlier that evening. While a deputy was still at the scene, Michele Clark sent his sister-in-law a second text message, stating, "I'm sorry about everything. I won't bother you or her ever again." The deputy photographed both text messages from Michele Clark to Danielle Clark as evidence.

---

[1]  Matthew and Danielle Clark continued to live together.

The child told Vucich that her uncle woke her up, took off her pajamas, and rubbed her body, including her breasts, buttocks, and genitalia. She stated that she had seen and touched his penis, as well as helped him "go pee pee."

In an interview with the Child Advocacy Center three days later, she stated that her uncle had touched another boy's penis, whom was later identified as the nine-year-old son of Danielle Clark's friend, Tonya. The boy visited the Clarks' home every other week during the time period in which Michele Clark lived there, and there were times that the boy was left alone with him.

In the course of his investigation, Danielle Clark volunteered to Vucich that, from April 2008 to April 2009, Michele Clark babysat her friend Tara's six-year-old daughter. When interviewed, Tara informed Vucich that, in December 2009, her daughter began exhibiting disorderly behavior at school. When she questioned her daughter about her behavior, the child told her that Michele Clark made her watch pornography on the computer and, on one occasion, asked her to take her clothes off, which she refused to do. Her daughter also stated that she knew about sex because of what Michele Clark showed her on his computer.

Vucich arrested Michele Clark on an outstanding warrant for a DUI. While in custody, he offered a statement to police. He first explained that he went to the Clarks' residence through an unlocked door, but later stated that he entered through a window. He told the police that he found his niece with her clothes off, but

later stated that she had them on and then took them off because she was itchy. He confirmed sending the second text message to his sister-in-law from his home via Yahoo instant messaging, and he confirmed his address as 3022 Glenwood Avenue. He also confirmed that he used LimeWire to download music, and he verified that he owned three computers, including a work laptop.

On April 26, 2010, Vucich swore out an affidavit to procure a warrant to search for evidence of aggravated criminal sexual assault and child pornography at Michele Clark's home at 3022 Glenwood Avenue; any computer equipment located at that address; and his laptop computer, which had been seized from his work-place.

### 2. Vucich's Affidavit and the State-Law Warrant

In his affidavit, Vucich provided details on his experience and background with law enforcement, including his participation on an FBI task force, his training on computer crimes, and his membership in multiple law enforcement groups. He explicitly states that he bases his affidavit on his training and experience, his investigation into Clark's alleged sexual assault on his niece, and information acquired by other investigators and persons specifically trained in the seizure and analysis of computers and electronic media.

In addition to the facts detailed in Part I.A.1, his affidavit contained general language about individuals associated with child pornography. Specifically, he stated:

Based on my training, knowledge, and experience, I am aware that individuals who are often associated with the offenses alleged relating to sex offenses involving minors will often collect and/or view images on the computer for the following reasons:

(a) They will receive sexual gratification, stimulation, and satisfaction from actual physical contact with children and/or from fantasies they may have viewing children engaged in sexual activity or sexually suggestive poses (in person, in photographs, or other visual media) or from literature describing such activity.

(b) Collect sexually explicit or suggestive materials (hard-core[] and soft-core pornography, whether of adults and/or children) in a variety of media . . . that they use for their own sexual arousal and/or gratification.

(c) Almost always possess and maintain their material . . . in the privacy and security of their homes or some other secure location. Child pornography distributors/collectors typically retain recordings, mailing[] lists, child erotica, and videotapes for many years, and store their child pornography amongst other, otherwise legal media or files. . . . [D]igital evidence, like child pornography contraband, is different than traditional evidence that can be concealed, sold, used, and/or destroyed and is not as volatile as other illegal items like narcotics. . . . When images are stored and/or deleted . . . they can potentially be recovered and may still reside on the digital

> media . . . . I have also learned that . . . these computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted or viewed via the internet . . . .

The warrant was granted. It authorized police to search Clark's Glenwood Avenue address and to seize any items that constituted evidence of aggravated criminal sexual abuse and child pornography. The warrant encompassed, among other items, Clark's Dell Inspiron laptop; any equipment that could collect, analyze, create, display, store, conceal, print, or transmit electronic, magnetic, optical, or similar computer impulses or data; any data-processing devices such as central processing units, memory typewriters, and self-contained laptop or "notebook" computers; printers, scanners, modems, and internal and peripheral storage devices; cellular telephones; photographs; and biological evidence.

The search ensued on April 26, 2010. Police seized two computers, DVDs, CDs, two hard drives, and the Dell Inspiron laptop, which was kept at Clark's place of employment.

### 3. Vucich's Second Affidavit and the Federal Warrant

Vucich then swore out an affidavit to procure a second, federal search warrant that would authorize him to search the computers and hard drives seized. He added to his affidavit the following facts: (1) that

Danielle and Matthew Clark stated that Michele Clark installed LimeWire on their computer and was the only individual in their home to use that program; and (2) that Michele Clark had given to his stepfather a different computer that he had used while living with them. The federal warrant was granted. Police analyzed the computer and hard drives and recovered incriminating evidence of child pornography.

## B. Procedural Background

Michele Clark requested a *Franks* hearing to contest the veracity of Vucich's affidavits. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).[2] Claiming that Vucich omitted material information from his affidavits, he moved to suppress the evidence recovered from his computer and hard drives because police lacked probable cause to search for child pornography. In particular, he argued that Vucich improperly connected his alleged sexual

---

[2] Under *Franks*, "if a defendant can demonstrate by a preponderance of the evidence that the signatory of the warrant affidavit made a false statement (or omitted a material fact) either intentionally or with reckless disregard for the truth, then a court will consider whether the content of the affidavit, setting aside the false material (or including the omitted material), is sufficient to establish probable cause." *United States v. Prideaux-Wentz*, 543 F.3d 954, 962 (7th Cir. 2008) (citing *United States v. Merritt*, 361 F.3d 1005, 1010 (7th Cir. 2004) (vacated on other grounds by *Merritt v. United States*, 543 U.S. 1099 (2005))).

assault on his niece to possession of child pornography through boilerplate language, lacking any specific basis for suspecting him of possession. He also claimed that the alleged sexual assault of his niece provided an insufficient nexus between his brother's home and his address to authorize the police to search the latter.

The district court granted his request for a *Franks* hearing and found no material omissions. It further held that, read including the allegedly omitted information, Vucich's affidavits fostered probable cause to search for evidence that Michele Clark committed sexual assault on a minor child or possessed child pornography, including at his residence. The district court, therefore, denied Michele Clark's motion to suppress.

Michele Clark entered a contingent guilty plea to possession of child pornography, reserving his right to appeal the district court's denial of his motion to suppress. He now appeals.

## II. Discussion

When evaluating a district court's denial of a motion to suppress, we review issues of law de novo and issues of fact for clear error. *United States v. Whited*, 539 F.3d 693, 697 (7th Cir. 2008).

We review de novo the sufficiency of an affidavit in support of a warrant to search. *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010). Probable cause to issue a warrant and authorize a search exists if the affidavit "sets forth sufficient evidence to induce a reasonably

prudent person to believe that a search will uncover evidence of a crime." *United States v. Watzman*, 486 F.3d 1004, 1007 (7th Cir. 2007); *see Ornelas v. United States*, 517 U.S. 690, 696 (1996). We evaluate probable cause based on the totality of the circumstances, *see Illinois v. Gates*, 462 U.S. 213, 230-32 (1983), but we afford special deference to the decisions of the judge issuing the warrant, *see Aljabari*, 626 F.3d at 944.

Michele Clark disputes that probable cause existed to search his home and personal computers on two grounds. First, he contends that his alleged sexual assault of his niece did not support probable cause that he possessed child pornography. Second, he argues that whatever probable cause existed, it justified only a search of his brother's home, not his personal residence. We disagree.

**A. The Evidence that Michele Clark Sexually Assaulted His Niece Created Probable Cause to Search for Child Pornography**

Michele Clark challenges Vucich's affidavits on the ground that they contain boilerplate language about the correlation between sex offenses involving minors and the perpetrator's possession of child pornography. He claims that the affidavits contain no credible, particularized evidence that *he* possessed child pornography.

Boilerplate language about the tendencies of child pornography collectors supports probable cause for a search when the affidavit also includes facts that

suggest the target of the search "has the characteristics of a prototypical child pornography collector." *United States v. Prideaux-Wentz*, 543 F.3d 954, 960 (7th Cir. 2008). We recognize that no one or "magic" profile for child pornography collectors exists. *See United States v. Pappas*, 592 F.3d 799, 803-04 (7th Cir. 2010). Rather, the target of the search's demonstrable sexual interest in children, along with the use of a computer in acting on that interest, sufficiently connects him to the "collector" profile to justify including the boilerplate language. *See id.* (approving the inclusion of boilerplate language on the habits of child pornography collectors where the affidavit also detailed the target's uploading or possession of multiple pieces of child pornography).

In his affidavit, Vucich did not provide an example of Michele Clark downloading child pornography; however, he did not need to do so in order to establish Clark's sexual interest in children and connect him to the "collector" profile. Vucich's state-law affidavit extensively described Clark's sexual assault on his four-year-old niece. It further detailed his sexual advances on a nine-year-old boy and another six-year-old girl. In short, the affidavit documents Michele Clark's particular, sexual attraction to children and his willingness to act on his proclivities. The affidavit thus places him at the heart of the boilerplate language to which he objects: as an individual associated with sex offenses involving minors, he likely "collect[ed] and/or view[ed] images on the computer." *See supra* Part I.A.2.

Moreover, Vucich's affidavit provided evidence that Clark used a computer—a probable repository for child

pornography—as part of his advances. These details, too, provided probable cause to connect Clark to the "collector" profile and to conduct an appurtenant search. Specifically, Clark watched pornography on his computer while concurrently asking a six-year-old girl to take her clothes off. Facially, the affidavit provides probable cause to search.

### 1. Details in the Affidavit Challenged as False or Improperly Included

#### i. Six-Year-Old Girl's Account of Her Interactions with Clark

Clark protests that the six-year-old girl's testimony and the FBI investigation ought to have been excluded from the issuing judge and the district court's consideration of probable cause. With respect to the six-year-old girl's accusations, Clark contends that Vucich recklessly and falsely construed her account of the events in his affidavit. During the suppression hearing, he claims, Vucich testified that the child stated only that she had seen pornographic images on Clark's computer, not that he had deliberately shown the images to her. He underscores this distinction as subverting the affidavit's veracity and the resultant probable cause to search.

The affiant's credibility is an issue of fact on which we afford special deference to the district court. *See, e.g., United States v. Adamson*, 441 F.3d 513, 519 (7th Cir. 2006) ("Credibility determinations are factual in nature and

therefore are reviewed for clear error."). In this case, the district court considered the affidavit and had the opportunity to directly consider Vucich's testimony during direct and cross-examination. The district court concluded that his testimony was truthful such that probable cause to search existed and suppression was improper. We find no clear error in that judgment, particularly in light of the fact that, on cross-examination, Vucich never revised his testimony that Clark had asked the child to take her clothes off while he watched pornography with her nearby. Whether he was watching child pornography at the time is irrelevant, as is whether or not he intentionally showed the child the images: regardless of these distinguishable facts, he used a computer in conjunction with his attempt to fulfill a sexual fantasy with a minor child.

### ii.  The FBI Investigation in 2008

Clark further argues that the information regarding the FBI's investigation into child pornography distribution at 3952 Torch Club Road must be excluded as speculative because Vucich never specifically described the seventeen images that prompted that investigation. Without doing so, he asserts, the issuing court could not rely upon the fact that those images were *child* pornography when assessing probable cause.

We agree that, to the extent it factored into the issuing judge and district court's evaluation of probable cause, the FBI investigation was improperly included. Vucich cites the fact of a previous FBI investigation as circum-

stantial evidence that Clark fits the "collector" profile: the FBI suspected someone at 3952 Torch Club Road of distributing child pornography over LimeWire in October 2008; Michele Clark resided at that address during that time period; and, coupled with the other evidence in the affidavit, there presently exists reason to suspect that Clark (1) was responsible for the child pornography distribution at the time; and (2) continues to collect such images. While circumstantial evidence may be included in an affidavit to support probable cause, *see, e.g., United States v. Curry*, 538 F.3d 718, 730 (7th Cir. 2008) (approving in an affidavit the inclusion of circumstantial evidence that the defendant perpetrated the crime under investigation), the fact of an FBI investigation alone is probative of nothing. To prove relevant to the search at issue, the FBI investigation must have uncovered child pornography or the use of LimeWire to distribute child pornography, an outcome which cannot be assumed and which requires either submission of the images themselves or a detailed description of them. *See United States v. Lowe*, 516 F.3d 580, 586 (7th Cir. 2008) (explaining that probable cause to search for child pornography may, in lieu of the actual images, be based on a detailed verbal description of them, but implying that one or the other is required). Absent the pictures or a detailed description, the FBI investigation could not properly factor into the issuing judge or district court's probable cause assessment.

Nevertheless, we hold that without the details of the FBI investigation, the evidence that Clark sexually assaulted his niece, sexually advanced upon two other

children, and employed a computer in at least one of his inappropriate advances constitutes sufficiently particularized facts to characterized him as a member of the "collector" class. Accordingly, Vucich appropriately included in his affidavit the boilerplate language on this class of individuals, and the issuing judge and district court were permitted to consider that correlative information when evaluating the probable cause to conduct a search for the possession of child pornography. In light of the totality of the circumstances, we hold that probable cause to search for child pornography existed.

### 2. Alternatively, the Good Faith Exception to the Exclusionary Rule Applies in This Case

Assuming arguendo that probable cause did not exist without including the FBI's 2008 investigation, we conclude that the good faith exception to the Exclusionary Rule applies to the search, and the district court properly admitted the evidence. *See United States v. Leon*, 468 U.S. 897, 922-23 (1984) (holding that evidence obtained in violation of the Fourth Amendment remains admissible if the officer conducting the search acted in good faith reliance on a search warrant). The Supreme Court instructs us that "evidence should be suppressed 'only if it can be said that the law enforcement officer had knowledge, or may be properly charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" *Herring v. United States*, 129 S. Ct. 695, 701-02 (2009) (quoting

*Illinois v. Krull*, 480 U.S. 340, 348-49 (1987)). When, conversely, the challenged search or seizure is the result of "objectively reasonable law enforcement activity," *Leon*, 468 U.S. at 897-99, the good faith exception applies.

The fact that an officer obtains a warrant, as Vucich did in this case, creates a presumption that he conducted the search or seizure with an objectively reasonable belief that his actions were lawful. *See Pappas*, 592 F.3d at 802 (quoting *United States v. Elst*, 579 F.3d 740, 744 (7th Cir. 2009)). To rebut this presumption, Clark must prove: "(1) the issuing judge wholly abandoned his judicial role and failed to perform his neutral and detached function, serving merely as a rubber stamp for the police; (2) the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (3) the issuing judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Id.* Clark attempts to prove the second and third options—that Vucich's affidavit lacked indicia of probable cause because he did not include a description of the seventeen images underlying the FBI investigation and that he misled the issuing judge by omitting from his affidavit allegedly material facts.

As discussed above, we agree that the absence of a description of the seventeen images uncovered in 2008 rendered insufficient the FBI's 2008 investigation as a basis for probable cause to search for child pornography.

The investigation, however, was hardly the affidavit's only indicium of probable cause. Vucich's description of Clark's sexual assault on his niece, as well as the evidence suggesting he sexually assaulted another nine-year-old boy and advanced on a six-year-old girl situated him within the "collector" profile and created probable cause to search for evidence of child pornography. The issuing judge's reliance on the affidavit and the conducting officer's reliance on the warrant were far from entirely unreasonable. As such, Clark does not rebut the presumption of good faith reliance on this ground.

Furthermore, we find no evidence that Vucich misled the issuing judge either by recklessly omitting material information about the six-year-old's account of her interactions with Clark or by omitting the fact that Matthew Clark was the registrant of the computer in his home. Whether Michele Clark was watching pornography or child pornography when he asked the six-year-old child to remove her clothing is immaterial, as is whether he made her watch the pornography or simply watched it with her nearby. Omission of these facts did not mislead the issuing judge or deprive him of his ability to render a fair assessment. That Clark watched any form of pornography while asking a child to remove her clothing provides a sufficient basis to find probable cause to search for child pornography.

We similarly find immaterial the alleged omission regarding the registrant of the IP address at the Torch Club Road residence. Setting aside our conclusion that

the FBI investigation ought not to have factored into the issuing judge's analysis without a description of the seventeen images, the fact that Matthew Clark or Danielle Clark might, too, be the owner or registrant of a computer and IP address in their home is obvious. Omitting that detail—if one may call failure to point out the obvious an "omission"—did not mislead the issuing judge or deny him access to material information. Had Vucich provided descriptions of the images and properly included the FBI investigation, the fact that child pornography had been distributed on that computer in the Clarks' home while Michele Clark resided there would serve as adequate circumstantial evidence that the issuing judge could consider as he evaluated probable cause to search for child pornography.

Clark, therefore, has not rebutted the presumption that the searching officers acted in objectively reasonable reliance on the issued warrant. The good faith exception applies to the search, and the district judge appropriately admitted the evidence in question.

## B. Sufficient Probable Cause Existed to Search Michele Clark's Home and Personal Computers

Clark maintains that even if probable cause to search for child pornography existed, Vucich's affidavits failed to establish a sufficient nexus between his brother's home and his own to justify a search of his residence. In particular, he stresses that whatever assault occurred, it transpired in his brother's home. Moreover, he emphasizes, police could not reasonably have expected to

retrieve from his home computer the alleged "apology text" he sent via Yahoo instant messaging. We disagree.

In light of our conclusion that probable cause existed to search for evidence that Michele Clark collected child pornography, all that was required to authorize a search of his personal residence were facts that "allow[ed] for a reasonable inference that there [wa]s a fair probability that evidence w[ould] be found in a particular place." *See Aljabari*, 626 F.3d at 944-45. We have held that in child pornography cases, an issuing judge may reasonably assume that a recipient or collector of child pornography would store that content in his home. *See id.* (citing *Watzman*, 486 F.3d at 1008). That analysis controls in this case as well: once probable cause existed to characterize Clark as a collector of child pornography, probable cause existed to extend the search to his home and personal computers.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.