**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 7, 2017
Decided August 7, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

No. 17-1354

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 16-CR-40022-JPG-1 |
| CHARLES B. WEATHERMAN, *Defendant-Appellant*. | J. Phil Gilbert, *Judge*. |

**O R D E R**

Charles Weatherman entered a conditional guilty plea to one count of possessing child pornography, 18 U.S.C. § 2252A(a)(5)(B), after authorities executing a search warrant at his home turned up child pornography on his electronic devices. On appeal Weatherman claims that the district court should have granted his motion to suppress, which argued that the affidavit supporting the search warrant was deficient because the investigator did not attach the images of child pornography he expected to find or include a description of those images. Whether or not the affidavit was deficient, however, we conclude that the search warrant was executed in good faith. On that basis we uphold the denial of Weatherman's motion to suppress.

In March 2015, FBI special agent Tyrone Forte applied for a warrant to search Weatherman's home on suspicion that Weatherman possessed child pornography. Agent Forte supported his application with an affidavit explaining that he had worked at the FBI for 24 years, the last 10 investigating violent crimes against children. After explaining his knowledge of the ways in which child pornography is produced, possessed, and traded over the Internet, Forte described the course of the FBI's investigation into the production and distribution of child pornography by Jason Carpenski, a Maryland resident. That investigation had led investigators to Weatherman.

Agent Forte explained that Carpenski had been indicted on charges of producing, possessing, and distributing child pornography. *See* 18 U.S.C. §§ 2251(a), 2252(a)(2), 2252A(a)(5)(B). Carpenski had admitted taking an illicit photo of a minor and sharing it through email and a Craigslist post. According to Forte, a search of Carpenski's email account revealed he had sent "at least one image of child pornography" to several other accounts, including "mrscarrierobert@yahoo.com" and "kendrahammer94@yahoo.com." One image in particular, titled "CAM00313," was sent to both of those addresses. Someone using the "kendrahammer94@yahoo.com" address responded to Carpenski's email with eight more images. Seven of those, Forte declared, were child pornography. And someone using the "mrscarrierobert@yahoo.com" address sent Carpenski two images that Forte also characterized as child pornography.

Based on Yahoo! subscriber data, Agent Forte came to believe that Weatherman was the man behind the two email accounts, "kendrahammer94@yahoo.com" and "mrscarrierobert@yahoo.com." These accounts had been opened within a month of each other and most recently had been accessed from the same Internet Protocol address. Forte traced that IP address to subscribers Virginia and Terry Weatherman at 703 Prairie Street in Altamont, Illinois. Public records showed that Terry Weatherman was deceased, though a Charles Weathermen also resided at the same address. Public records further linked Charles Weatherman to another address in Altamont, 201 Clover Street. The residence at that address was abandoned, but over the course of several days investigators saw a van registered to Charles Weatherman parked at 703 Prairie Street.

Agent Forte's suspicions were heightened when he investigated Charles Weatherman's Facebook profile. His Facebook page identifies as friends Kendralynn Hammer and Carrie Roberts—names corresponding with the email addresses that received images from Carpenski. The Facebook accounts had been opened around the same time as the email accounts, and the Facebook page for Hammer

includes a photo depicting Kenralynn Hammer as a young woman who, according to Forte, was possibly 17 years old. Neither page had much activity, Forte said, but the profiles listed one another—and Charles Weatherman—as friends. The page for Hammer was captioned "I'll be your little naughty angel," while the Roberts page was captioned "My Angel." Agent Forte believed these accounts were fictitious and explained his understanding that persons have used phony Facebook accounts "to target and gain access to unsuspecting young boys and girls in order to begin the grooming process." Forte further described his knowledge that "certain individuals use these fictitious accounts to find other adults with their same interests to either validate their own inappropriate actions toward juveniles or to begin to trade images, movies or recounted stories of sex with minors to satisfy their sexual desires."

Weatherman's Facebook page revealed connections with additional profiles that Agent Forte suspected were fictitious. These other profiles purported to represent young women with "sexually suggestive overtones such as bondage, incest, nudist communities and role playing." Several of the accounts had been accessed from the same two or three IP addresses, meaning that, on multiple occasions, the same computer and wireless connection had been used to log in to each account.

Based on this information, a magistrate judge issued a search warrant for the residence at 703 Prairie Street. Federal agents executed that warrant and seized computers, thumbdrives, and other electronic devices. Forensic analysis uncovered child pornography, leading to Weatherman's indictment for possessing child pornography, 18 U.S.C. 2252A(a)(5)(B).

Weatherman moved to suppress those images on the ground that the search warrant was not supported by probable cause because Agent Forte's affidavit does not describe the suspected images of child pornography. Weatherman further argued that the agents who executed the warrant would have known that the supporting affidavit fails to demonstrate probable cause, and thus the government could not rely on the good-faith exception to defeat his motion to suppress.

The district court denied Weatherman's motion. The court acknowledged that the magistrate judge was not entitled to rely on Agent Forte's conclusory statements characterizing as "child pornography" the photos sent by Carpenski to the email addresses believed to be operated by Weatherman. But, the court concluded, even without those conclusory statements, the affidavit establishes probable cause to believe that Weatherman possessed child pornography. The court pointed to the fact that Carpenski had been indicted for producing, possessing, and distributing child

pornography and that Carpenski had sent images to email accounts traced to Weatherman. Not only had a grand jury determined that Carpenski produced child pornography, but Carpenski himself had admitted taking a pornographic image of a minor and sending it to others by email. The court further noted the pattern of suspicious Facebook and email personas likely created by Weatherman, which, in Forte's training and experience, indicated an interest in the sexual activity of children. Thus concluding that the affidavit supports a finding of probable cause, the district court declined to address whether the agents who executed the warrant had acted in good-faith reliance on the issuing judge's determination.

Weatherman entered a conditional guilty plea, reserving his right to challenge the suppression ruling on appeal. He was sentenced to 120 months' imprisonment and 5 years' supervised release.

On appeal Weatherman renews his contention that the search-warrant affidavit does not establish probable cause. He argues in his brief that "a search warrant affidavit seeking authority to search for evidence of child pornography offenses must contain either the actual images suspected of being child pornography or a detailed verbal description of them." But at oral argument, Weatherman's counsel conceded that our precedent does not require that *every* affidavit supporting a search warrant in a child-pornography case be accompanied by an image or detailed description of an image. *See United States v. Clark*, 668 F.3d 934, 940–41 (7th Cir. 2012); *United States v. Lowe*, 516 F.3d 580, 586 (7th Cir. 2008). Indeed, such an argument would fail. Our precedent requires that if a probable-cause determination is based on an affiant's knowledge that a suspect produced, possessed, or distributed specific images of "child pornography," the issuing judge must independently determine whether those images meet the legal definition of child pornography. *See Clark*, 668 F.3d at 940–41. The judge cannot accept at face value the affiant's characterization of those images as child pornography but, instead, must either examine the images or evaluate detailed verbal descriptions. *Id.* at 941; *see Lowe*, 516 F.3d at 586. The reason for this rule is that "identifying images as child pornography will almost always involve, to some degree, a subjective and conclusory determination on the part of the viewer" which must be made by the judge, not the affiant. *United States v. Pavulak*, 700 F.3d 651, 661 (3d Cir. 2012) (quotations marks and citations omitted); *see also Illinois v. Gates*, 462 U.S. 213, 239 (1983) ("Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.").

If the determination of probable cause is based on more than just an affiant's conclusory characterization of an image as child pornography, however, a search warrant will not be invalid simply because the supporting affidavit lacks a reproduction of the image or a description. Rather, a reviewing court may look to the other facts contained in the affidavit to see if those facts could establish probable cause without the conclusory references to child pornography. *Clark*, 668 F.3d at 941. In *Clark* we did just that, concluding that the affidavit still established probable cause because there was evidence that the defendant had sexually assaulted at least three children and used a computer in at least one of those instances. *Id.*

Excising all conclusory references to child pornography from the affidavit in this case leaves us with a thin set of facts from which to determine whether probable cause existed. The affidavit states that Carpenski, a man who admitted producing child pornography and emailing it to others, sent several images to two email addresses traced to Weatherman. Each email address incorporates a woman's name—Kendra Hammer and Carrie Roberts—corresponding to a Facebook profile listed as a "friend" on Weatherman's own Facebook page. Both profiles had been accessed from an IP address assigned to a computer in Weatherman's home. Agent Forte averred that, given his expertise, he believed the Facebook pages were fictitious accounts of the type typically used by persons trying to find and gain access to young boys and girls and to connect with other adults with similar interests in sexual activity with minors.

The district court concluded that these facts were "just enough" to establish probable cause, and Weatherman raises several challenges to that determination. But even if the affidavit is insufficient to support probable cause, the information it includes is enough to justify the executing agents' good-faith reliance on the warrant.

Suppression of evidence is not an appropriate remedy for a deficient search warrant where the agent who executed the warrant did so with a good-faith belief that the warrant was supported by probable cause. *See United States v. Leon*, 468 U.S. 897 (1984). Agent Forte's decision to seek a warrant is prima facie evidence of good faith. *See United States v. Woolsey*, 535 F.3d 540, 546–47 (7th Cir. 2008). To rebut that presumption, Weatherman was required to show that either "the issuing judge abandoned his role as a neutral and detached arbiter, that the officers were dishonest or reckless in preparing the supporting affidavit, or that the affidavit was so lacking in probable cause that no officer could have relied on it." *United States v. Mykytiuk*, 402 F.3d 773, 777 (7th Cir. 2005). Weatherman argues that, because *Clark*'s requirements were clear when Forte drafted his affidavit, his omission of the images or a description

constituted disregard for, or ignorance of, clearly established circuit law. He further argues that the affidavit obviously is lacking in probable cause, such that the agents' reliance on it was unreasonable.

Agent Forte reasonably could have believed that probable cause was established simply based on the fact that Weatherman had exchanged images with a known producer of child pornography. This is especially plausible given the agent's suspicions (which Weatherman never has refuted) that Weatherman had created several false Facebook personas and email addresses in an attempt to either groom unsuspecting minors to participate in sexually explicit activities or to connect with other collectors of child pornography.

Moreover, the description in Carpenski's indictment of the same photo referenced in the warrant affidavit—CAM00313—makes clear that the image is child pornography, so there is no credible argument that the warrant affidavit was intended to mislead by omitting that description. *See* Indictment, *United States v. Carpenski*, No. 14-CR-461-CCB (D. Md. October 1, 2014), ECF No. 1. The indictment specifically references the photo entitled "CAM00313" as the basis for the production charge, and describes the image as depicting Carpenski "touching the genitalia of Jane Doe," a minor female, less than twelve years of age. *See* Indictment, *United States v. Carpenski*, No. 14-CR-461-CCB (D. Md. October 1, 2014), ECF No. 1. Although leaving the description out of the warrant affidavit may have been sloppy, the omission did not render the warrant so obviously lacking in probable cause (when combined with the other facts) to preclude good-faith reliance on the magistrate judge's determination of probable cause. *See Woolsey*, 535 F.3d at 547.

The judgment of conviction thus is AFFIRMED.