UNITED STATES

v.

David L. BRANTNER, 468 78 0197, Staff Sergeant (E–6), U.S. Marine Corps.

NMCM 88 0534.

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 16 Sept. 1987.

Decided 30 May 1989.

LCDR L. Saccoccio, JAGC, USN, Appellate Defense Counsel.

LT Charles A. Polen, JAGC, USNR, Appellate Government Counsel.

Before BYRNE, ALBERTSON and JONES, JJ.

ALBERTSON, Judge:

Appellant was convicted, pursuant to his pleas, by a military judge sitting alone as a general court-martial for violating Articles 80, 128, and 134 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 928, and 934, respectively. He was found guilty of one specification of attempting to commit an indecent assault, twelve specifications of assault with a means likely to produce grievous bodily harm, and twenty-two specifications of indecent assault. The approved sentence extended to confinement for five years, forfeiture of all pay and allowances, reduction to pay grade E–1, and a dishonorable discharge.

Appellant's conviction arises from his conduct while a Marine Corps recruiter in rural Oregon. During questioning of recruits about their medical history, appellant would discuss the recruit's need to undergo

certain medical procedures as requirements for enlisting. Appellant told recruits that he was authorized to conduct such procedures, and that these procedures would expedite the enlistment process. These procedures included hernia examinations during which appellant fondled the recruits' genitalia; used unsterilized hypodermic needles and syringes to inject water into recruits' buttocks; masturbated two recruits to secure a semen sample; and used an unsterilized needle to withdraw fluid from a recruit's scrotum and to draw blood from a vein in the recruit's penis. Appellant now alleges (a) that his guilty pleas to all charges and specifications were improvident because the victims of these assaults consented to his acts; (b) that use of an unsterilized hypodermic needle is not a means likely to produce grievous bodily harm, thus making appellant's pleas to the specifications under Charge II improvident; and (c) that the sentence as adjudged and approved is inappropriately harsh. We disagree and affirm the findings, as modified below, and upon reassessment, affirm the sentence as approved on review below.

I

Appellant's first assertion that his pleas are improvident is based upon the theory that he has a complete defense to all the charges and specifications to which he pled guilty. The theory upon which appellant relies for this assertion is that consent is a defense to the offense of rape. The assaults and indecent assaults to which he pled guilty are sexual in nature and therefore, he claims, analogous to rape such that the same defense of consent applies. The argument follows that because his victims consented, even though he obtained their consent fraudulently, his pleas to the assaults and indecent assaults are improvident. Appellant maintains in the alternative, that the misrepresentations made by him to the recruits were sufficiently un-

related to the acts performed that they rendered the fraud "insignificant." [1]

We reject appellant's first contention that the recruits' consent to his acts of conducting purported medical procedures made these indecent contacts lawful. Appellant acknowledged at trial that the recruits submitted to his actions because they believed he had the authority to tell them to do so as part of the enlistment process. Such fraudulently induced consent, however, cannot transform appellant's contacts with these recruits into lawful acts. Because appellant was not, in fact, authorized to perform these "examinations" and "procedures," any consent he obtained from the victims was no defense to charges of indecent assault and assault with a means likely to produce grievous bodily harm. The indecent contact appellant made with the recruits was an unlawful application of force, and therefore an indecent assault. These offenses cannot be analogized to rape where consent, even that obtained by fraud, serves to negate the offense itself, because here the physical contact induced by appellant, with or without consent, would have been, at least, a violation of Article 134, UCMJ, indecent acts with another. See United States v. Reed, 9 C.M. R. 396, 403 (ABR 1953), pet. denied, 10 C.M.R. 159 (C.M.A.1953). See R. PERKINS & R. BOYCE (PERKINS), CRIMINAL LAW, p. 154, 1082–83, (3d edition, 1982). Finally, appellant admitted that but for his false representations that he was authorized to conduct these "examinations" and "procedures" necessary to the enlistment process, the recruits would not have submitted to his acts. Thus, appellant's argument that his misrepresentations to the recruits were unrelated to the acts performed, such that the fraud was insignificant and did not vitiate the recruits' consent, lacks merit.

1. We do not believe that fraud can be considered "insignificant" because a fraudulent representation, by definition, is "a false statement as to a material fact, made with intent that another rely thereon, which is believed by other party and on which he relies and by which he is induced to act and does act to his injury...." BLACK'S LAW DICTIONARY 790 (4th ed. 1951). Since "insignificant" is used by appellant we will presume he used, and we will hereinafter use, the word in the generic rather than the legal sense.

## II

■ Additionally, consent of a victim is no defense when the conduct does, as here, cause or threaten serious bodily harm. This leads us to appellant's second contention that his pleas to the specifications under Charge II alleging assault with a means likely to produce grievous bodily harm cannot be sustained because the instruments appellant used, the unsterilized hypodermic needles and syringes, were not means likely to produce grievous bodily harm. Such form of aggravated assault is established not by the subjective state of mind of the victim or assailant, *see United States v. Cato*, 17 M.J. 1108 (ACMR 1984); *United States v. Bush*, 47 C.M.R. 532 (CGCMR 1973), but by an objective test as to whether the instrument utilized is used in a manner likely to produce death or grievous bodily harm. *United States v. Smith*, 4 U.S.C.M.A. 42, 15 C.M.R. 41 (1954). Appellant's victims were injected with water by *unsterilized* hypodermic needles into their buttocks, and had bodily fluids removed from their scrotum and penis by *unsterilized* needles. The stipulation of fact entered into by appellant at trial describes the likely detrimental health effects of injections administered by someone without medical training. Prosecution Exhibit 5. That no permanent injury to these victims is alleged or shown in the record is of no consequence, for assault with a means likely to cause serious bodily injury does not require that injury be inflicted. Manual for Courts–Martial, United States, 1984, Part IV, paragraph 54c(4)(a)(iv). Under the circumstances of this case, we find that appellant's use of the needles and syringes constituted a means likely to produce grievous bodily harm.

## III

■ We will *sua sponte* comment on the providency of appellant's pleas of guilty to Charge I and its Specification, an attempt to commit an indecent assault upon a recruit by attempting to fondle the recruit's genitals with the intent to gratify his sexual desires. During the providence inquiry, appellant admitted that he asked the recruit to undergo a hernia examination so appellant could fondle the recruits' genitals. The recruit refused appellant's request. No specific overt act was identified by the military judge in his explanation of the elements of the offense nor admitted by appellant as it related to the attempted indecent assault. Appellant admitted only that he told the recruit that a hernia examination was required for enlistment, that appellant was required to perform it, and that appellant's intent, in part, was to fondle the recruit's genitals in order to gratify his own sexual desire.

The issue is then whether mere words can constitute the overt act required to convict appellant of the offense of attempt, *i.e.*, was appellant's request to conduct a hernia examination of this recruit more than mere preparation to commit the offense alleged? Put another way, was some physical overt act required in order to complete the attempt? We conclude that as this particular offense is alleged, appellant's request, made under color of authority, to conduct a hernia examination of this recruit, is sufficient to constitute the overt act necessary for appellant to plead providently to an attempt to commit an indecent assault.

A distinction is made between measures taken by way of preparation for the commission of a crime and steps taken in the direction of its actual perpetration.... "The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement toward the commission after the preparations are made."

. . . .

*So far as the common law is concerned there is no criminal attempt unless what was done went beyond the stage of preparation. The "act must reach far enough toward the accomplishment of the desired result to amount to the commencement of the consummation;" although it is not required to be the "last act" intended for the purpose.*

PERKINS, at p. 617 (footnotes omitted). (Emphasis in original.)

The question presented here is whether appellant's request of the recruit to submit to a hernia examination was a direct movement toward the commission of an indecent assault.[2] While we have found no case law, directly or indirectly, addressing this issue, Professor Perkins states:

> The solicitation of another to commit a crime is an attempt to commit that crime if, and only if, it takes the form of urging the other to join with the solicitor in perpetrating that offense,—not at some future time or distant place, but here and now, and the crime is such that it cannot be committed by one without the cooperation or submission of another, such as bribery or buggery. Where such cooperation or submission is an essential feature of the crime itself, the request for it now is a step in the direction of the offense.

PERKINS, at p. 652 (citations omitted).

Apparently, four schools of thought have developed over the years in determining whether a solicitation under some circumstances can constitute an attempt. Two views presently prevail. LAFAVE & SCOTT, CRIMINAL LAW, at 494–495 (2d edition, 1982). Perkins, as quoted above, explains one view, which is restated in LaFave and Scott, as recognizing solicitation as "an attempt only if the overt acts have proceeded beyond what would constitute preparation if the solicitor himself planned to commit the offense." *Id.* at 495. A second view identified by LaFave and Scott states that "the solicitor cannot be guilty of an attempt no matter what he does because it is not his purpose personally to commit the offense." *Id.* at 495. Our reading of the cases cited to support these two prevailing positions leads us to adopt the former view based upon the reasoning set forth in *State v. Otto*, 102 Idaho 250,

629 P.2d 646 (1981). *Otto's* emphasis is to identify the distinction between acts of preparation and those of perpetration. The preparatory-perpetratory differentiation is based on the "proximity of the act, both spatially and temporally, to the completion of the criminal design. 'It is often said, ... that for a criminal attempt there must be a dangerous proximity to success.' ... [O]nly when apparent proximity is reached has there been the beginning of 'perpetration.' " *Id.* at n. 2. Additionally, *Otto* recognized that a prerequisite to understanding the general rule is the fact that "solicitation is in the nature of the incitement or encouragement of another to commit a crime in the future. Thus it is essentially preparatory to the commission of the targeted offense." 629 P.2d at 649. But when there is a dangerous proximity to success, the line of solicitation ends, and an attempt begins because there exists a direct movement toward the commission of the offense.

■■■■ Although we believe that submission to a verbal request is not an essential feature of the offense of indecent assault, and thus, under some circumstances, would not constitute a direct movement toward the commission of that crime, in the particular circumstances of this case, the proximity of the appellant's request to conduct a hernia examination to the completion of the indecent act, both spatially and temporally, was such that the solicitation constituted an attempt. Appellant's incitement was not to commit a crime in the future but at that moment. But for the recruit's negative response, the indecent assault would have been completed; appellant's verbal request, made under color of authority and within the recruiting office, was in dangerous proximity to success in the commission of the offense he planned. Accordingly, we affirm the findings of guilty to the offense of attempted indecent assault.[3]

---

2. We will not address the more esoteric issue of whether one can attempt to commit an assault, indecent or otherwise, when by definition an assault is an attempt. *Cf.* PERKINS, p. 159, 631–32; FIELD & MARSHALL, CRIMES, p. 243 (4th Ed.1940).

3. Even assuming our adoption of the *Otto* rationale to be misplaced, we would conclude that the conduct admitted to by appellant during the providence inquiry does constitute solicitation of an indecent act, a violation of Article 134, UCMJ, 10 U.S.C. § 934. Appellant admitted during the providence inquiry that he requested

Accordingly, the findings are affirmed and the sentence approved on review below is also affirmed.

BYRNE and JONES, JJ., concur.

the recruit to allow appellant to fondle the recruit's genitals, albeit under fraudulent pretenses.

A finding of guilty to Charge I and its Specification as a violation of Article 134, UCMJ, accords with appellant's statements during the providence inquiry. Appellant believed he was, and we would find him, guilty of requesting the recruit to submit to these acts. The maximum punishment authorized is the same for soliciting this indecent act in violation of Article 134, UCMJ, as it is for attempting to commit an indecent assault under Article 80, UCMJ. Because appellant admitted to the conduct which would constitute this lesser included and closely-related offense, there is no reason to believe that such findings of guilt would violate any standards of due process, or that he would be unprotected from prosecution for any other charge arising out of this particular incident. *See United States v. Epps*, 25 M.J. 319 (C.M.A. 1987); *United States v. Felty*, 12 M.J. 438 (C.M.A. 1982). In short, there is no material prejudice to the substantial rights of the accused in our finding him guilty of a violation of Article 134, solicitation of an indecent act. While appellant's answers during providency do not directly establish a factual basis for appellant's belief and admission that his conduct was prejudicial to good order and discipline or was of a nature to bring discredit upon the armed services, an essential element of solicitation under Article 134, UCMJ, appellant's recitation of the circumstances surrounding his solicitation of the recruit are sufficient for this Court to conclude, as

a matter of law, that his conduct was service discrediting. *See United States v. Epps*, 25 M.J. 319 (C.M.A.1987); *United States v. Hatley*, 14 M.J. 890 (NMCMR 1982); *United States v. Bazan*, 7 M.J. 694 (NCMR 1979).

Accordingly, even if there were no attempt in violation of Article 80, UCMJ, as set forth in Charge I and its Specification, we would find appellant guilty of the lesser included offense of solicitation of an indecent act in violation of Article 134, UCMJ, by exceptions and substitutions so that the Specification under Charge I would read:

Charge I: Violation of the UCMJ, Article 134. Specification 1: In that Staff Sergeant David L. BRANTNER, U.S. Marine Corps, Casual Company, Headquarters and Service Battalion, Marine Corps Recruit Depot, San Diego, California, did, while on active duty, as a Recruiter at the Marine Corps Recruiting Substation, Roseburg, Oregon, during October or November 1986, wrongfully solicit Private T. A. THOMPSON, U.S. Marine Corps, to commit an indecent act, by requesting Private THOMPSON to submit to a hernia examination, specifically intending to fondle Private THOMPSON'S testicles and penis to gratify BRANTNER'S sexual desires.

The findings, as modified, would then be affirmed. Upon reassessment of the sentence, we would find that the sentence as adjudged and approved on review below is entirely appropriate for the appellant for these offenses, despite the appellant's admirable record of prior service. *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).