# UNITED STATES NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS WASHINGTON, D.C.

**Before**
**J.A. FISCHER, D.C. KING, K.J. BRUBAKER**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**MATTHEW P. HOFFMANN**
**CORPORAL (E-4), U.S. MARINE CORPS**

**NMCCA 201400067**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged**: 23 August 2013.
**Military Judge**: LtCol Nicole Hudspeth, USMC.[1]
**Convening Authority**: Commanding General, II Marine Expeditionary Force, Camp Lejeune, NC.
**Staff Judge Advocate's Recommendation**: Maj C.G. Tolar, USMC.
**For Appellant**: LT Jessica Ford, JAGC, USN.
**For Appellee**: Capt Cory Carver, USMC; LT Ann Dingle, JAGC, USN.

**11 December 2014**

---
**PUBLISHED OPINION OF THE COURT**
---

KING, Judge:

A general court-martial, consisting of members with enlisted representation, convicted the appellant, contrary to his pleas, of one specification each of attempted sodomy of a child, indecent liberties with a child, child enticement, and possession of child pornography, in violation of Articles 80,

---

[1] Major N.A. Martz, USMC, presided over the motions session at which the appellant's motion to suppress was litigated and he ruled on that motion.

120, and 134, Uniform Code of Military Justice.[2]  The appellant was sentenced to confinement for seven years, reduction to pay grade E-1, total forfeiture of pay and allowances, and a dishonorable discharge.  The convening authority approved the sentenced as adjudged.

The appellant now raises four assignments of error (AOE): (1) the search authorization that lead to the discovery of child pornography was defective; (2) the attempted sodomy conviction is legally and factually insufficient; (3) the military judge who presided at trial should have recused herself; and (4) the appellant was subjected to illegal pretrial punishment.[3]  Upon review of the record, this court, *sua sponte*, raised a related issue of whether the seizure of the appellant's laptop computer, purportedly founded upon consent, was valid.[4]

After carefully considering the record of trial, the parties' pleadings, and oral argument, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed.  Arts. 59(a) and 66(c), UCMJ.

## Background

On the afternoon of 27 September 2011, while walking home from school on board Camp Lejeune, AL, a thirteen-year-old boy, saw a man in a light colored sport utility vehicle (SUV) slowly drive by twice while making a gesture with his hand that AL took to indicate fellatio.  The third time the man drove by, he made the same gesture and then asked AL if he wanted to go for a ride.  AL declined and the man drove away.

On 1 November 2011, AL saw the same SUV in the same vicinity and immediately called his mother, who promptly drove to his location to pick him up.  While returning home, AL and his mother passed the SUV, turned around, and began following it.  A high speed chase ensued and AL's mother was unable to keep up with the SUV.  However, AL was able to write down the SUV's license plate number.[5]  AL's mother notified her husband

---

[2] 10 U.S.C. §§ 880, 920, and 934.

[3] We have considered AOEs 3 and 4 and find no error.  *United States v. Clifton*, 35 M.J. 79, 81 (C.M.A. 1992).

[4] The parties provided supplemental briefs on this issue.

[5] The license plate number recorded by AL matched the appellant's plate number exactly, with the exception of one letter.  Record at 428, 439.

who soon thereafter located the SUV and followed it to a work site on board the base and notified security. Minutes later security arrived, identified the vehicle as belonging to the appellant, entered the appellant's work site and took the appellant into custody.

After being read his rights, the appellant provided Agent Rivera of the Criminal Investigation Division consent to search his barracks room and seize any evidence found therein. Upon arriving at the appellant's room, Agent Rivera began searching the appellant's desk. However, during the search, the appellant revoked his consent. Although Agent Rivera stopped searching, he nevertheless removed several items from the appellant's room, including the appellant's laptop.

On 4 Nov 2011, Special Agent (SA) Shutt of the Naval Criminal Investigative Service (NCIS) assumed investigative jurisdiction of the case and shortly thereafter discovered that a similar crime occurred in the local civilian jurisdiction in April 2011. Specifically, a man drove by another thirteen-year-old boy, RW, several times while RW was walking home from school. On the third time, the man in an SUV pulled up to RW and asked RW if he wanted a "quickie." RW said, "no," and the man asked if RW knew what a "quickie" was. RW said "no," and the man drove around the block again. The man drove up to RW a fourth time and asked, "are you sure?" RW said, "yes." The man said, "you'll like it," but RW said, "no" a final time. The man drove away and did not come back again.[6] Additionally, SA Shutt discovered that PM, a ten-year-old boy who also lived on Camp Lejeune, similarly alleged that a man in an SUV drove by him in September 2011 and made a similar indecent gesture.[7]

On 9 March 2012, the appellant's Commanding Officer (Commander) authorized a search of the appellant's seized digital media for evidence of child pornography. The search of the appellant's laptop revealed evidence of child pornography, of which 18 images and two videos were admitted into evidence. Additional facts necessary to resolve the issues are developed below.

---

[6] This incident eventually gave rise to three convictions: attempted sodomy of a child, indecent liberties with a child, and child enticement.

[7] The members acquitted the appellant of the specifications involving AL and PM.

3

**Seizure of the Appellant's Property**

Prior to requesting consent to search his barracks room, Agent Rivera informed the appellant that he was investigating the crime of "indecent liberty" and obtained the appellant's consent to search his barracks room and seize "all items used for storage that are locked and unlocked."[8]  When Agent Rivera entered the appellant's room, he went to the secretary and desk and began to remove items from the desk drawers capable of storing electronic media (e.g. thumb drives, DVDs, etc.), placing those items on the desktop.  Agent Rivera also located a laptop computer as well as a desktop computer on or under the desk.

When Agent Rivera began to unplug the desktop computer, the appellant "withdrew his permission – the authorization to search."[9]  While Agent Rivera immediately discontinued his search, he "seiz[ed] as evidence" all of the electronic storage devices he had discovered, including the laptop and desktop computers.[10]  The next day, the appellant delivered to Agent Rivera a written revocation of his consent and a demand for the immediate return of the seized property.

Prior to trial, the appellant moved to suppress evidence discovered on the laptop, alleging the seizure was unreasonable under the Fourth Amendment.  At the motions hearing, the parties focused on two issues: whether the seizure occurred before consent was revoked and whether probable cause existed sufficient for the Commander to later authorize a forensic search of the seized laptop computer.  The military judge found the seizure to be lawful, as the appellant withdrew his consent "after the investigators had already seized his digital media."[11]  In the alternative, the military judge found that the evidence of child pornography in the appellant's laptop would have been inevitably discovered.  Accordingly, he denied the motion to suppress and admitted the evidence of child pornography as well as evidence that the appellant searched the internet for information on "where sex with children is legal" and "lowest age of consent."[12]

---

[8] Prosecution Exhibit 9.

[9] Record at 100.

[10] *Id.*

[11] Appellate Exhibit LVIII at 5.

[12] Record at 568.

On appeal, the parties briefed the issue of whether consent was revoked prior to seizure. We need not address this debate because, assuming arguendo a Fourth Amendment violation occurred, we conclude that the evidence of child pornography was admissible since the appellant's laptop would have inevitably been seized and the subsequent search for child pornography was supported by probable cause.

## Inevitable Discovery

Generally, "evidence obtained as a result of an unlawful search or seizure . . . is inadmissible." MILITARY RULE OF EVIDENCE 311(a), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). However, an exception applies if the evidence "would have been obtained even if [the] unlawful search or seizure had not been made." MIL. R. EVID. 311(b)(2). For this exception to apply, the Government must show, by a preponderance of the evidence, that "when the illegality occurred, the government agents possessed, or were actively pursuing, evidence or leads that would have inevitably led to the discovery of the evidence" in a lawful manner. *United States v. Dease*, 71 M.J. 116, 122 (C.A.A.F. 2012) (quoting *United States v. Kozak*, 12 M.J. 389, 394 (C.M.A. 1982)). This exception only applies "[w]hen the routine procedures of a law enforcement agency would inevitably find the same evidence." *United States v. Owens*, 51 M.J. 204, 210 (C.A.A.F. 1999) (citations omitted). "[M]ere speculation and conjecture" as to the inevitable discovery of the evidence is not sufficient when applying this exception. *United States v. Maxwell*, 45 M.J. 406, 422 (C.A.A.F. 1996). In making this determination, we consider the totality of the circumstances. *United State v. Weston*, 66 M.J. 544, 549 (N.M.Ct.Crim.App. 2008), *aff'd*, 67 M.J. 390 (C.A.A.F. 2009).

Had the appellant declined consent to search his room, Agent Rivera testified he would have secured the scene and tried to obtain a search authorization. Securing the scene while law enforcement officers pursue a warrant does not offend the Fourth Amendment. *See United States v. Hall*, 50 M.J. 247, 250 (C.A.A.F. 1999) ("'[W]hen officers have probable cause to believe that evidence of criminal activity is on the premises, the temporary securing of a dwelling to prevent the removal or destruction of evidence' is reasonable." (quoting *Segura v. United States*, 468 U.S. 796, 809 (1984) (Burger, C.J., and O'Conner, J., plurality op.))).

5

Regarding the determination of probable cause to seize the appellant's laptop, Agent Rivera was "very aware"[13] of the previous allegations that an individual matching the appellant's description, in a vehicle similar to the appellant's, was driving slowly through base housing shortly after the local school children were released and propositioning young boys to engage in sexual activity. The record also indicates that the following information was either known to or easily discovered by Agent Rivera: (1) AL described the individual as a slim white male with no facial hair and short blond hair; (2) AL described the vehicle as a white, four-door SUV with a wheel on the back with a cover over the wheel; (3) PM described the vehicle as a silver SUV with a wheel on the back and a yellow and black license plate; (4) PM described the driver as a white male with short hair; (5) the appellant had fled housing at a high rate of speed while being chased by AL's mother after AL had identified the appellant's vehicle; (5) at the same time, PM's mother had seen the appellant's vehicle in the neighborhood and immediately contacted base security. In fact, PM's mother was on the phone with base security when she watched the appellant speed by with AL's mother in pursuit; (6) the vehicle pursued had a distinctive license plate that, in the midst of the pursuit, AL had written down exactly, with the exception of one letter; and (7) in his barracks room, the appellant possessed several items capable of storing electronic media. Additionally, the appellant was a Caucasian male who owned a silver, four-door SUV with a wheel attached to the back and a cover over that wheel; the appellant's SUV had New York plates, which were yellow and black in color; and the appellant was in the vicinity of local schools at the hours when the children were walking home. In addition to this information, Agent Rivera testified that, in his 40 months of handling sex crimes, 70-80 percent of those cases involved "electronic evidence."[14] Finally, based upon his "training and experience," the agent opined that "[y]ou don't go directly to soliciting children . . . without doing some type of researching or inquiring about it with media equipment."[15]

Under these facts, we conclude that Agent Rivera would have provided the available information to the Commander with a request for authorization to seize and search the appellant's laptop. *See Weston*, 66 M.J. at 553 (finding it unreasonable to

---

[13] Record at 450.

[14] *Id.* at 115.

[15] *Id.* at 113.

conclude that experienced agent would not have "applied her superior knowledge and experience in using the existing and available resources . . . to quickly obtain a search authorization").

We also conclude that the quantum of information available to Agent Rivera was sufficient to establish probable cause to seize the appellant's laptop. Probable cause is a reasonable belief that "requires more than bare suspicion, but something less than a preponderance of the evidence." *United States v. Leedy*, 65 M.J. 208, 213 (C.A.A.F. 2007); *see also* MIL. R. EVID. 315(f)(2). Probable cause is evaluated under the "totality of the circumstances" and is a "practical, common-sense decision whether, given all the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Leedy*, 65 M.J. at 212-13 (citations and internal quotation marks omitted). "A probable cause determination merely requires that a person 'of reasonable caution' could believe that the search may reveal evidence of a crime; 'it does not demand any showing that such a belief be correct or more likely true than false.'" *United States v. Bethea*, 61 M.J. 184, 187 (C.A.A.F. 2005) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)).

It is appropriate for those seeking authorization to search and seize evidence to utilize their training and experience to "shed important light on the facts presented." *Leedy*, 65 M.J. at 216. Agent Rivera's training and experience led him to what we believe is a conclusion supported by "common-sense," namely that those who attempt to locate and then engage in sexual activity with children frequently first conduct some type of computer-based research. Under these facts, where the appellant was accused of multiple brazen attempts to engage in sexual activity with several different boys in several different locations, it is entirely reasonable to conclude that the appellant's laptop would contain evidence of the alleged crimes, such as evidence of internet searches regarding the location of schools, school release times, or base housing maps. Therefore, under these circumstances, we conclude that probable cause to seize the appellant's laptop existed and that Agent Rivera would have obtained a command authorization to search and seize the laptop. Thus, the seizure of the laptop was inevitable. Once seized, SA Shutt secured command authorization to search the laptop for child pornography, requiring that we next analyze the validity of that authorization.

## Validity of the Search Authorization

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. Evidence obtained in violation of the Fourth Amendment is generally inadmissible. MIL. R. EVID. 311.

At trial, the appellant moved to suppress the evidence of child pornography, claiming that the affidavit provided no evidence that the appellant possessed child pornography other than the "conclusory" statement of SA Shutt that, in her "training and experience . . . there is an intuitive relationship between acts such as enticement or child molestation and the possession of child pornography."[16] We disagree.

We review a military judge's denial of a motion to suppress for an abuse of discretion. *Leedy*, 65 M.J. at 212. In reviewing a probable cause determination, our task is simply to determine whether the official issuing the search authorization had a "substantial basis" to conclude that probable cause existed. *United States v. Huntzinger*, 69 M.J. 1, 7 (C.A.A.F. 2010) (citations omitted). The Court of Appeals for the Armed Forces (CAAF) has identified "four key principles" for reviewing probable cause determinations: (1) we view the facts in the light most favorable to the prevailing party; (2) we give substantial deference to the probable cause determination made by a neutral and detached magistrate; (3) we resolve close cases in favor of the magistrate's decision; and (4) we view the facts in a commonsense manner. *Id.* (citing *United States v. Macomber*, 67 M.J. 214, 218 (C.A.A.F. 2009). The CAAF has interpreted the Supreme Court's guidance to "require that 'resolution of doubtful or marginal cases . . . should be largely determined by the preference . . . [for] warrants.'" *United States v. Monroe*, 52 M.J. 326, 331 (C.A.A.F. 2000) (quoting *Maxwell*, 45 M.J. at 423).

The request for authorization to search the appellant's laptop was supported by an affidavit from SA Shutt and a conversation that she had with the appellant's Battalion Commander (Commander).[17] The affidavit detailed the allegations

---

[16] AE VI at 4.

[17] Probable cause determinations may be supported by written or oral statements. MIL. R. EVID. 315(f)(2).

8

that the appellant had, on three separate occasions, driven by ten to thirteen-year-old boys and made sexual gestures and comments to them. The affidavit also noted that law enforcement had seized the appellant's laptop. The affidavit further stated:

> The Affiant knows from training and experience that there is an intuitive relationship between acts such as enticement or child molestation and the possession of child pornography. Child pornography is in many cases simply an electronic record of child molestation. For individuals seeking to obtain sexual gratification by abusing children, possession of child pornography may be a logical precursor to physical interaction with a child and an individual who is sexually interested in children is likely to be predisposed to searching for and receiving child pornography. Additionally, individuals sexually interested in children frequently use child pornography to reduce the inhibitions of those children. Computers have revolutionized the way in which those sources and users interact. Computers and Internet connections are readily available and are tools of the trade for individuals wishing to exploit children and have greatly changed and added to the way in which child pornography is disseminated, collected, and viewed. The relative ease with which child pornography may be obtained on the Internet might make it a simpler and less detectable way of satisfying pedophilic desires.[18]

The affidavit also set forth that SA Shutt joined NCIS in 2006 and possessed the following relevant credentials: certified member of the Internet Crimes Against Children (ICAC) task force (a national program dedicated to investigations of child exploitation via the Internet); Defense Computer Forensic Laboratory certified Digital Medial Collector; ICAC certified Peer 2 Peer and undercover chat investigator; had received advanced training in child sexual abuse investigations; and was an NCIS Field Training Agent. SA Shutt also holds a Bachelor of Arts degree in Psychology and a Master of Arts degree in Forensic Psychology. SA Shutt testified that her experience included spending seven years working on cases involving the sexual exploitation of children during which she worked on "hundreds" of child exploitation cases; of these cases, the

---

[18] AE VI at 4-5.

"majority" involved digital media; she had created over 50 affidavits seeking command authorization involving media devices; finally, all of the child enticement cases SA Shutt had worked on involved evidence contained in digital media.

The Commander testified that SA Shutt helped him "draw a direct line" between "someone who has solicited children . . . to child pornography.  She built a nexus for me that it's a precursor, it's an enabler. . . . [t]hat it desensitizes the target. . . . She provided me background on predators that indicated that child pornography is a precursor to solicitation."[19]

Relying upon several federal circuit court decisions, the appellant now argues that probable cause was lacking since the "intuitive relationship" between child enticement and possession of child pornography is nothing more than bare suspicion.[20]  This appears to be an issue of first impression for the military and federal circuits are split on whether evidence of a sexual offense against a child is sufficient to establish probable cause to search for child pornography.

For example, in *Dougherty* v. *City of Covina*, 654 F.3d 892 (9th Cir. 2011), *cert. denied*, 133 S. Ct. 1725 (2013), two sixth graders alleged that their teacher touched them inappropriately while they were at school.  Other students alleged that the same teacher had looked at them inappropriately.  Based on this evidence, the police sought a warrant to search the teacher's home for child pornography.  In the affidavit supporting the request, a police officer detailed his extensive training and experience focused on investigating cases in which juveniles had been sexually victimized.  The officer then concluded that "based upon my training and experience . . . I know subjects involved in this type of criminal behavior, have in their possession child pornography."  *Id.* at 896.  The Ninth Circuit held that this "conclusory statement" was insufficient to support probable cause to search for child pornography.  *Id* at 899.  The affidavit contained "no facts tying the acts of Dougherty as a possible child molester to his possession of child pornography."  *Id.* at 898.  In the absence of any such facts, the warrant was defective.

Similarly, in *United States v. Doyle*, 650 F.3d 460 (4th Cir. 2011), the affidavit detailed allegations that *Doyle* had

---

[19] Record at 147-48.

[20] Military courts have not definitively addressed this issue.

10

sodomized three children in his home.  The Fourth Circuit held that "evidence of child molestation alone does not support probable cause to search for child pornography."  *Id.* at 472 (citation omitted).  The *Doyle* court therefore found that the warrant was not supported by probable cause, and the fruits of the search were therefore inadmissible.  *Id.* at 476.  Yet the *Doyle* opinion does not make clear whether, as in *Dougherty* and the appellant's case, the affidavit alleged a nexus between the two crimes based on the affiant's training and experience.

The appellant cites the Third Circuit's opinion in *Virgin Islands v. John,* 654 F.3d 412 (3d Cir. 2011).  In *John*, the affidavit concerned allegations that John had molested children at the school where he worked.  The affidavit made no mention of child pornography whatsoever.  Yet the warrant allowed police to search John's home for evidence of child pornography.  Because the affidavit left the supposed connection between evidence of child molestation not only unsupported by evidence, but completely unstated, the Third Circuit ruled that the warrant was not supported by probable cause.  *Id.* at 420.  But even as it did so, the Third Circuit acknowledged that "perhaps extensive investigatory experience might reveal a pattern substantial enough to support a reasonable belief on the part of a police detective."  *Id.*

Likewise, in *United States v. Falso*, 544 F.3d 110 (2d Cir. 2008), the Second Circuit decided a case where the connection between child sexual abuse and child pornography was left unstated in the affidavit.  There, the affidavit stated that Falso "either gained access or attempted to gain access" to a website that featured eleven images of child pornography and an offer to sell access to a different website that contained more child pornography.  *Id.* at 114.  Additionally, the affidavit reported that Falso had, 18 years earlier, been convicted of sexually abusing a 7-year-old girl.  *Id.*  The Second Circuit held that Falso's criminal history was insufficient to support a finding of probable cause to search for child pornography and that the district court had fallen prey to "an inferential fallacy of ancient standing" by concluding otherwise.  *Id.* at 122 (quoting *United States v. Martin*, 426 F.3d 68, 82 (2d Cir. 2005) (Pooler, J., dissenting)).  Then-Judge Sotomayor wrote:

> Although offenses relating to child pornography and
> sexual abuse of minors both involve the exploitation
> of children, that does not compel, or even suggest,
> the correlation drawn by the district court.  Perhaps
> it is true that all or most people who are attracted

11

to minors collect child pornography.  But that association is nowhere stated or supported in the affidavit.

*Id.* (footnote and citations omitted)

The Sixth Circuit faced a similar case in *United States v. Hodson,* 543 F.3d 286 (6th Cir. 2008).  There, the defendant said on an internet chat that he had previously molested underage boys and that he was willing to do so again.  Based on this evidence, a detective sought a warrant to search the defendant's house for child pornography.  But the detective "offered no assertion – in either the affidavit or any other evidence (e.g., expert testimony) then before the magistrate judge – of any relational nexus between child molestation and child pornography."  *Id.* at 289.  Thus, the Sixth Circuit held that the resulting warrant was defective.  *Id.* at 292.

And so three of the cases the appellant cites – *John*, *Falso*, and *Hodson* - are distinguishable in the same important respect.  Specifically, these three cases stand for the unremarkable proposition that probable cause may not be comprised of unstated assumptions.  Had the nexus between child molestation and child pornography been expressly alleged, the magistrates in those cases would have been able to assess the credibility of those allegations and make a common sense ruling on the likelihood that the police would find child pornography.  Here, the nexus between child enticement and child pornography was expressly alleged in the affidavit and supported by the SA's "training and experience."  The Commander was therefore able to weigh the credibility of the information before deciding to issue the search authorization.  Thus, neither *John*, *Falso*, nor *Hodson* are persuasive.[21]  *Dougherty* and *Doyle* serve as persuasive authority in favor of the appellant's position, but there is at

---

[21] Another case cited by the parties that we find distinct from the case at bar is *United States v. Clark*, 668 F.3d 934 (7th Cir. 2012).  In *Clark*, the Seventh Circuit held that there was probable cause to search Clark's home for child pornography when the affidavit supporting the request for a search warrant contained: evidence that Clark had sexually assaulted his niece, evidence that Clark had shown his niece child pornography at some point in the past, and boilerplate language indicating that people who commit sexual offenses against minors frequently collect and view child pornography on their home computers.  668 F.3d at 939-40.  The Government's case in *Clark* was much stronger than in the appellant's case, because the affidavit in *Clark* actually pointed to evidence that Clark had accessed child pornography at some point in the past.  Consequently, the fact that the Seventh Circuit ruled that probable cause existed in *Clark* sheds little light on the appellant's case, in which the affidavit contained much less evidence directly linking the appellant to child pornography.

12

least one case on the other side of the scales.

In *United States v. Colbert*, 605 F.3d 573 (8th Cir. 2010), the defendant approached a 5-year-old girl at a playground and invited her to come to his apartment and watch videos. That same day, the police obtained a warrant to search Colbert's home, where they discovered child pornography. On appeal, the Eighth Circuit rejected a challenge to the validity of the search warrant, writing:

> There is an intuitive relationship between acts such as child molestation or enticement and possession of child pornography. Child pornography is in many cases simply an electronic record of child molestation. Computers and internet connections have been characterized elsewhere as tools of the trade for those who sexually prey on children. For individuals seeking to obtain sexual gratification by abusing children, possession of child pornography may very well be a logical precursor to physical interaction with a child: the relative ease with which child pornography may be obtained on the internet might make it a simpler and less detectable way of satisfying pedophilic desires. *Cf. United States v. Byrd*, 31 F.3d 1329, 1339 (5th Cir. 1994) ("[C]ommon sense would indicate that a person who is sexually interested in children is likely to also be inclined, i.e., predisposed, to order and receive child pornography.").

*Id.* at 578.[22]

We view the facts in a common sense manner when we review probable cause determinations. *Huntzinger*, 69 M.J. at 7. Under these facts, our common sense tells us that the Eighth Circuit's analysis is correct: an individual accused of deliberately seeking out boys walking home alone and then engaging in brazen, repeated attempts to entice those boys into sexual activity is likely to possess child pornography, either as a means to gratify their desires or as an aid in those activities. Moreover, the rational link between child enticement and child pornography was fully articulated by SA Shutt in the affidavit that she presented to the Commander as well as during her ninety-minute conversation with him, during which she utilized

---

[22] It is not lost on this Court that the language in SA Shutt's affidavit was taken directly from the Eighth Circuit's opinion in *Colbert*.

13

her training and experience to "shed important light on the facts presented." *Leedy*, 65 M.J. at 216.

The record supports that the Commander was in a position to consider the totality of the circumstances, including any lack of evidence in the affidavit tying the appellant directly to child pornography. Weighing the totality of the circumstances, he determined that probable cause existed, and we give substantial deference to that determination. Therefore, we hold that the Commander had a "substantial basis" to conclude probable cause existed and the military judge did not abuse his discretion by denying the defense motion to suppress the evidence of child pornography.

## Legal Sufficiency of the Attempt Conviction

The appellant next contends that his conviction for attempting to commit sodomy with a minor is legally and factually insufficient.[23] We review legal and factual sufficiency *de novo*.[24] The test for legal sufficiency is whether any rational trier of fact could have found that the evidence met the essential elements of the charged offense, viewing the evidence in a light most favorable to the Government. *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987). The test for factual sufficiency is whether we are convinced of the appellant's guilt beyond a reasonable doubt, allowing for the fact that we did not personally observe the witnesses. *Id.* at 325.

Article 80(a), UCMJ, provides that "[a]n act, done with specific intent to commit an offense under this chapter, amounting to more than mere preparation and tending, even though failing, to effect its commission, is an attempt to commit that offense." The MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 4b lists the elements of the offense of attempt as:

(1) That the accused did a certain overt act;
(2) That the act was done with the specific intent to commit a certain offense under the code;

---

[23] The relevant specification read as follows: "In that [appellant], U.S. Marine Corps, 8th Communications Battalion, II Marine Expeditionary Force, Camp Lejeune, North Carolina, did at or near Camp Lejeune, North Carolina, on or about 18 April 2011, attempt to commit sodomy with R.W., a child who had attained the age of 12 years, but had not attained the age of 16 years."

[24] *See* 10 U.S.C. § 866.

(3) That the act amounted to more than mere preparation; and

(4) That the act apparently tended to effect the commission of the intended offense.

The Manual also explains, "[p]reparation consists of devising or arranging the means or measures necessary for the commission of the offense. The overt act required goes beyond preparatory steps and is a direct movement toward the commission of the offense." Part IV, ¶ 4c(2).

Here, the military judge instructed the members that the elements of the offense were substantially as follows:

That the accused did a certain act, that is, ask RW for a quickie, or words to that effect;

That the act was done with the specific intent to commit the offense of sodomy with RW;

That the act amounted to more than mere preparation; and

That such act apparently tended to effect the commission of the offense of sodomy except for RW's declining to do so, which prevented completion of that offense.

. . . .

Sodomy is unnatural carnal copulation. "Unnatural carnal copulation" occurs when a person takes into his mouth the reproductive sexual organ of another person.[25]

The appellant now argues that his conviction of this offense is legally and factually insufficient for two reasons: (1) the question "do you want a quickie" is not a substantial step and (2) the Government failed to prove the appellant had the specific intent to engage in oral copulation.

### Substantial Step

Admittedly, there is an "elusive line" between mere preparation and a substantial step toward commission of a

---

[25] Record at 595

predicate offense. *United States v. Winckelmann*, 70 M.J. 403, 407 (C.A.A.F. 2011) (citing *United States v. Schoof*, 37 M.J. 96, 103 (C.M.A. 1993); *United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007) ("requiring a substantial step for criminal attempt because 'the mere intent to violate a federal criminal statute is not punishable as an attempt unless it is also accompanied by significant conduct'")) (additional citations omitted). As such, there is no hard and fast rule to determine whether an act crosses the line between mere preparation and a substantial step. However, "'[a] substantial step must be conduct strongly corroborative of the firmness of the defendant's criminal intent.'" *United States v. Byrd*, 24 M.J. 286, 290 (C.M.A. 1987) (quoting *United States v. Jackson*, 560 F.2d 112, 116 (2d Cir. 1977). Because an act must be more than "mere preparation," the substantial step must "unequivocally demonstrat[e] that the crime will take place unless interrupted by independent circumstances." *Winckelmann*, 70 M.J. at 407 (citations and internal quotation marks omitted).

In *Wincklemann*, the appellant was convicted of attempted child enticement after he engaged in a sexually explicit internet chat with a person he believed to be a fifteen-year-old boy. Even though the conversation was sexually explicit, the conversation ended without any concrete plans to meet in person for sexual activity. *Id.* at 408. The closest the conversation got to making such plans was a single message from the appellant – "u free tonight" – to which the presumptive teenager replied, "gotta go talk soon?" *Id.* at 406. CAAF overturned the attempt conviction, noting that "there was no evidence when the chat ended that either enticement or sexual activity with a minor would take place unless interrupted by independent circumstances." *Id.* at 408. The court went on to caution against "[t]reating speech (even obscene speech) as the 'substantial step' because it 'would abolish any requirement of a substantial step.'" *Id.* at 407-08 (quoting *United States v. Gladish*, 536 F.3d 646, 650 (7th Cir. 2008)).

However, words can constitute such a step depending on the particular facts of the case. Where the overt acts are words, the "physical proximity and the presence or absence of intervention -- play heavily in determining whether the acts constitute a substantial step toward the commission of the crime." *United States v. Williamson*, 42 M.J. 613, 616 (N.M.Ct.Crim.App. 1995) (citations omitted). In *United States v. Brantner*, the appellant was convicted of attempting to commit an indecent assault by attempting to fondle a recruit's genitals. 28 M.J. 941 (N.M.C.M.R. 1989). The appellant did

16

this by asking the recruit to undergo a hernia examination during questioning about the recruit's medical history.  *Id.* at 944.  At issue was whether mere words can constitute an overt act and this court held they could, especially when "the proximity of the appellant's request to conduct a hernia examination to the completion of the indecent act, both spatially and temporally, was such that the solicitation constituted an attempt.  Appellant's incitement was not to commit a crime in the future but at that moment.  But for the recruit's negative response, the indecent assault would have been completed."  *Id.* at 945.

We find *Brantner's* analysis persuasive and apply it here to conclude that the appellant went beyond mere preparation.  He travelled to the area where the local middle school was located and drove by RW several times.  After pulling his car up so that he was face-to-face with RW, who was walking in the street, the appellant asked RW if he "wanted a quickie."  Due to the appellant's efforts and proximity, this can only be considered "direct movement toward the commission" of the offense.  *United States v. Church*, 32 M.J. 70, 72 (C.M.A. 1991) ("Between preparation for the attempt and the attempt itself, there is a wide difference.  The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement toward the commission after the preparations are made" (citations omitted) (citations omitted)).  Indeed, had RW acquiesced, the crime could have taken place right then and there in the appellant's SUV.  *United States v. King*, 71 M.J. 50, 52 (C.A.A.F. 2012) (verbal request for victim to expose her breasts sufficient overt act to constitute attempt because "[b]ut for his stepdaughter's refusal to lift her shirt, King would have 'view[ed]' his stepdaughter's breasts").

### Specific Intent

Regarding the sufficiency of evidence to prove the appellant had the specific intent to commit sodomy, the appellant contends that the Government failed to prove that by "quickie" the appellant had the specific intent to engage in oral copulation as opposed to other forms of sodomy.  We disagree.

The record contains ample evidence to support the members' verdict that the appellant specifically intended to engage in oral copulation with RW.  First, we note that the majority of child pornography located on the appellant's computer consisted

17

of images of boys engaged in oral copulation with other boys or men.  Moreover, AL and PM both testified that the male matching the appellant's description who drove the SUV by both of them made gestures indicative of oral copulation.[26]  The fact that the appellant was acquitted of the offenses involving AL and PM does not preclude the members from utilizing this evidence to determine the appellant's specific intent of asking RW if he "wanted a quickie."  In *United States v. Washington*, 63 M.J. 418, 422 (C.A.A.F. 2006), the CAAF held that alleged acts of sexual molestation charged on one date, for which the appellant was acquitted during the same trial, were admissible to show the appellant committed the act of sexual molestation on another date provided the evidence satisfies the test for admissibility under *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989). The *Reynolds* test consists, in relevant part, of the following elements: (1) Does the evidence reasonably support a finding by the court members that the appellant committed prior crimes, wrongs or acts; (2) What fact of consequence is made more or less probable by the existence of this evidence; and (3) Is the probative value substantially outweighed by the danger of unfair prejudice?  *Id.*

Applying the first prong of the *Reynolds* test to the facts of this case, we conclude that the members could have reasonably found that the other acts occurred.  Both AL and PM testified regarding the acts and their testimony was supported by corroborating evidence.

As for the second *Reynolds* prong, evidence is relevant under MIL. R. EVID. 401 when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  In this case, evidence that the appellant made gestures of his desire to engage in oral copulation with young boys under almost identical circumstances during the same timeframe is relevant to the determination of what the appellant's intent was when he asked RW if he "wanted a quickie."

Finally, applying the MIL. R. EVID. 403 balancing test for the third *Reynolds* prong, the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice.  *See United States v. Berry*, 61 M.J. 91, 95 (C.A.A.F. 2005).  The evidence was already introduced as actual charged

---

[26] AL and PM both simulated the gesture by bringing their closed right hands to their mouths and moving it in an in and out fashion.  Record at 375, 397.

misconduct and was "consistent in detail and tenor with the evidence regarding" RW.  *Washington,* 63 M.J. at 423.

Because the members could reasonably find that the other prior acts occurred, and the other acts evidence is logically and legally relevant, the members could properly consider the evidence that the appellant made a gesture indicating oral sex to AL and PM as evidence of his specific intent to engage in oral copulation with RW.[27]

Accordingly, viewing the evidence in the light most favorable to the government, we find a rational trier of fact could have found that the evidence met the essential elements of the charged offense and are ourselves convinced of the appellant's guilt beyond a reasonable doubt.

## Conclusion

The findings and sentence as approved by the convening authority are affirmed.

Senior Judge FISCHER and Judge BRUBAKER concur.

For the Court

R.H. TROIDL
Clerk of Court

---

[27] Additionally, MIL. R. EVID. 414(a) provides that "[i]n a court-martial in which the accused is charged with an offense of child molestation, evidence of the accused's commission of one or more offenses of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant."  This rule is "intended to provide for more liberal admissibility of character evidence in criminal cases."  MCM, App. 22, at A22-38.